# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

19 NOV 27 PM 3 47

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Advanced Grow Labs Technologies LLC, Advanced Grow Labs LLC,
Green Thumb Industries Inc., Christopher Mayle and David Lipton

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Stanley Scheufler

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* <br> Superior Court of the State of CA, County of San Diego <br> San Diego Central Courthouse, 330 W Broadway, San Diego, CA  92101 | 37-2019-00063385-CU-BC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Aaron Gott, Bona Law PC - (858) 964-4589 4275 Executive Square, Suite 200, Jolla, CA 90237

| DATE: <br> *(Fecha)* | NOV 2 7 2019 | Clerk, by <br> *(Secretario)* | G. Dixon-Cosby | , Deputy <br> *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Jarod Bona (SBN 234327); Aaron Gott (SBN314264); David Codell (SBN 200965)<br>Bona Law PC<br>4275 Executive Square, Suite 200<br>La Jolla, CA 92037<br> TELEPHONE NO. (858) 964-4589   FAX NO. (858) 964-2301<br>ATTORNEY FOR *(Name)* Stanley Scheufler | BUSINESS OFFICE<br>CENTRAL DIVISION<br>19 NOV 27 PM 3:47<br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS:  330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:  San Diego Central Courthouse

CASE NAME:
Stanley Scheufler v. Advanced Grow Labs Technologies LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2019-00063385-CU-BC-CTL<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☑ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.☑ monetary  b.☐ nonmonetary; declaratory or injunctive relief  c.☑ punitive
4. Number of causes of action *(specify)*:  Eight (8)
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 27, 2019
Aaron Gott

_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

BY FAX

Jarod Bona (CA Bar No. 234327)
jarod.bona@bonalawpc.com
Aaron Gott (CA Bar No. 314264)
aaron.gott@bonalawpc.com
David C. Codell (CA Bar No. 200965)
david.codell@bonalawpc.com
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
Tel. 858.964.4589 Fax: 858.964.2301

Martin A. Sabarsky (CA Bar No. 181207)
mas@kirkpatricksabarsky.com
Melissa R. Kirkpatrick (CA Bar No. (275312)
mrk@kirkpatricksabarsky.com
KIRKPATRICK & SABARSKY LLP
590 Cypress Hills Drive
Encinitas, CA 92024-2396
760.268.2069
888.305.1022 (fax)

*Counsel for Plaintiff*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| STANLEY SCHEUFLER,<br><br>    Plaintiff,<br><br>  v.<br><br>ADVANCED GROW LABS TECHNOLOGIES LLC, ADVANCED GROW LABS LLC, GREEN THUMB INDUSTRIES INC., CHRISTOPHER MAYLE, AND DAVID LIPTON,<br><br>    Defendants. | Case No.: 37-2019-00063385-CU-BC-CTL<br><br>Assigned to Department:<br><br>COMPLAINT FOR: (1) BREACH OF CONTRACT, (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, (3) *QUANTUM MERUIT*, (4) UNPAID WAGES, (5) FAILURE TO FURNISH WAGE STATEMENTS, (6) FRAUD, AND (7) CIVIL CONSPIRACY<br><br>UNLIMITED CIVIL CASE<br>Amount demanded exceeds $25,000<br><br>JURY TRIAL DEMANDED |

BY FAX

COMPLAINT

Plaintiff alleges the following upon actual knowledge with respect to himself and his own acts and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This case is about a foreign corporation (based in Canada) that specializes in cannabis-related products that acquired two U.S.-based limited liability companies. All three companies joined in a conspiracy with other defendants to structure the deal so as to deny plaintiff any wages or other compensation despite his eighteen months of service in San Diego County as chief operating officer of one of the limited liability companies. The defendants have consistently refused not only to pay plaintiff compensation, but also to pay any state or federal employment, social security, or disability insurance taxes that would be due on such wages or any local taxes related to plaintiff's employment in San Diego County—payment of which would benefit not only California, at least one California locality, and the United States, but also plaintiff for the rest of his life. Though medicinal and recreational marijuana are now legal under California law, wage theft and tax dodging by cannabis companies are not. Plaintiff seeks relief from this unlawful scheme and to recover the compensation owed to him.

2.      Defendants Advanced Grow Labs (AGL), Advanced Grow Labs Technologies (AGLT), David Lipton, and Christopher Mayle induced plaintiff Stanley Scheufler ("Scheufler") to become chief operating officer of AGLT in early 2017 with an offer of 11.7% of the equity ownership interests in AGLT among five other principals—the founding equity owners. Several months later, the parties agreed to a slight modification of Scheufler's compensation structure: he would return 1% of his 11.7% ownership interest (leaving him with 10.7%) in exchange for being paid a salary of $165,000 for working on AGLT's behalf with Berg Capital Markets, LLC (including in San Diego, California) with a target $1 million to $1.1 million minority investment in AGLT. Scheufler continued working for AGLT for approximately 18 months—no longer as a consultant, but as an employee with a promised salary, providing his time, skills, and

BONA LAW PC
BUSINESSJUSTICE.COM

acumen to build and provide value to the company through business and technological developments, but the founding equity owners unilaterally abandoned the engagement with Berg Capital and instead unilaterally sold AGLT and its sister company, AGL, to defendant Green Thumb Industries, LLC for $80 million in cash and Green Thumb stock. On information and belief, AGLT (including as Scheufler contributed to AGLT) was an important part of the deal that enabled the deal to go through, but Scheufler was misled about that so as to deny him money to which he was entitled.

     3.    Scheufler did not see a dime from the sale of AGLT. In fact, the defendants later claimed that (a) Scheufler did not, in fact, own 10.7% of AGLT's equity and (b) the value of AGLT was zero because AGLT was "thrown in" for no value as part of Green Thumb's acquisition of AGL. Both assertions are false and reflect a conspiracy to breach defendants' agreement with Scheufler and deprive him of any and all compensation for his 18-month employment. Each of the defendants, including Green Thumb, rigged the sale to deprive Scheufler, the sole equity owner of AGLT who is not also an equity owner of AGL, of his contractual compensation rights. Those same founding equity owners who now claimed AGLT had "no value" had previously sought a $10 million valuation for the company when they were looking for a minority investment. Each defendant was in on this scheme to intentionally deprive Scheufler of all benefit from his compensation agreement—Scheufler was not paid any compensation by AGLT (other than reimbursement of certain travel and other work expenses) despite 18 months of work and despite his equity stake in a valuable company that was sold as part of an $80 million package. This is an action to recover damages for breach of contract and the implied covenant of good faith and fair dealing, promissory estoppel, *quantum meruit*, unpaid wages, labor violations, and fraud.

## JURISDICTION AND VENUE

     4.    This Court has jurisdiction over this case because the contracts at issue were to be performed here and because the amount demanded exceeds $25,000.00.

Complaint

BONA LAW PC
BUSINESSJUSTICE.COM

5.    Venue is proper in this Court pursuant to Code of Civil Procedure Section 395(a) because none of the defendants reside in California.

## THE PARTIES

6.    Scheufler is, and has at all relevant times been, a citizen of the State of California. He resides in Encinitas, California in San Diego County and has worked with and for a variety of companies in his career as a consultant and as an employee. For the past 25 years, Scheufler's consulting and employment activities have been primarily based in California, though the nature of his work has involved out-of-state travel from time to time.

7.    AGL is an LLC that was formed in 2002 and currently is engaged in the development and sale of cannabis-related products.

8.    AGLT is an LLC that was formed in 2016 to advance key technologies in the delivery of therapeutic dosages of cannabis through novel devices and methods of such delivery. The only employees of AGLT were Scheufler and Chris Mayle, who also held a full-time operations position with AGL.

9.    Upon information and belief, the principal owners of AGL's equity, who include defendants Mayle and Lipton, have, at all relevant times, been principal owners of AGLT's equity as well.

10.    Scheufler is informed and believes that at all relevant times, defendants AGL and AGLT intentionally conferred on defendants Lipton and Mayle the authority to act as agents of AGL and AGLT with respect to the management of AGL's and AGLT's business affairs, the employment of persons to manage AGL's and AGLT's business affairs, and the authority to offer and execute contracts in furtherance of those purposes on AGL's and AGLT's behalf. Scheufler expected Mayle as CEO of AGLT to make decisions in the best interests of AGLT, which was employing Scheufler.

11.    Green Thumb is a Canadian corporation that manufactures, distributes, and sells various cannabis products for medical and adult use in the United States, including California. It offers cannabis flower and processed and packaged products, including

4

Complaint

concentrates, edibles, and topical and other cannabis products under the Rythm, Dogwalkers, The Feel Collection, Beboe, and other brands. Green Thumb distributes its products primarily to third-party retail stores and sells finished products directly to consumers in its own Rise retail stores. As of August 2019, it owned and operated 18 retail stores and had licenses for 77 locations across 12 U.S. markets. Green Thumb was founded in 2014 and is headquartered in Chicago, Illinois. Its stock is traded on the Canadian Securities Exchange (CSE) under the ticker symbol "GTII" and has a market capitalization of approximately $1 billion as of August 2019. Its stock is also traded over-the-counter via the OTCQX marketplace under the ticker symbol "GTBIF."

12. In Green Thumb's Financial Statement for the second quarter of 2019, AGL is listed as a wholly owned subsidiary of Green Thumb with the "Purpose" of the subsidiary listed as "License holder."

## **FACTUAL ALLEGATIONS**

13. Scheufler initially began work for AGL as a contractor pursuant to an agreement between AGL and his consulting company. Modest payments were made by AGL to Scheufler and later his consulting company, Encinitas Business Management, LLC, in accordance with the agreement between the parties at such time. Throughout that time, he served as research and development program director for AGL.

14. AGL and its directors later sought to tap into the market for technologies and devices to deliver consistent and reliable therapeutic doses of the active ingredients in cannabis. But AGL's accountant advised the company that it would need to create a new entity in order to obtain federal tax credits, deductions, and other benefits for research and development costs because AGL, as a grower and distributor of cannabis, was not eligible under the tax code.

15. AGLT was therefore formed to take over AGL technological development projects and thus obtain federal tax benefits not available to AGL. Initially, the five founding equity holders of AGL were the founding equity holders of AGLT. On

1  information and belief, the initial AGLT capitalization table for AGLT was the same as
2  the AGL capitalization table when AGLT was formed.

3      16.  After serving as a consultant, Scheufler was asked by defendants Mayle and
4  Lipton to terminate his paid consulting relationship with AGL and to join AGLT as chief
5  operating officer. As part of the offer of employment, Scheufler was asked to defer receipt
6  of cash compensation and was offered an 11.7% equity ownership position in AGLT,
7  which amount was equal to the ownership position of the five founding equity holders of
8  AGLT and AGL after they agreed to reduce their ownership position in AGLT so that
9  Scheufler's ownership position in AGLT would match theirs.

10      17.  Scheufler was integral to AGLT's purpose. He led the development of a key
11  medical marijuana ("MMJ") device when he consulted for AGL through his consulting
12  company and then continued such development after he transitioned into the role of COO
13  of AGLT. During this period, defendant Mayle served both as CEO of AGLT and also
14  head of operations for AGL.

15      18.  In his role as COO, Scheufler wrapped up Phase 1 of the device design with
16  AGLT's contractor; planned Phase 2 to lead the design through a Friendly User Trial;
17  worked with AGLT's law firm, Hogan Lovells, on patent filings; created investor decks
18  and backup materials; developed business modeling, rollout and growth plans,
19  headcount, profit/loss statements, and many versions of the company's business plan;
20  sought fundraising and capital funding partners; found and worked with Berg Capital as
21  the primary point of contact; and kept the AGL partners informed.

22      19.  Scheufler is a named inventor on the only two patent applications filed to
23  date with the U.S. Patent and Trademark Office in the name of AGLT—U.S. Patent
24  Applications 20180280637 and 20170266397, each entitled "Vaporizing Device System
25  and Method"—which were published on October 4, 2018 and September 21, 2017,
26  respectively. In 2018, Scheufler worked with AGLT's patent lawyers to update and re-file
27  one or more of these patents and extend AGLT's patent rights internationally.

28

Complaint

BONA LAW PC
BUSINESSJUSTICE.COM

20.   On information and belief, upwards of more than $200,000 have been spent to date on these patent applications. On information and belief, AGLT, the MMJ device, and the related patent applications were featured prominently in multiple slides in AGL's standard investor presentations. On information and belief, AGLT, the MMJ device, and the related patent applications were similarly featured in the marketing and diligence materials provided by AGL and AGLT to Green Thumb in connection with Green Thumb's acquisition of AGL and AGLT in February 2019.

21.   After Scheufler joined AGLT as COO, and prior to May 26, 2017, Scheufler was asked in writing by AGLT (through defendant Mayle) to accept a reduced amount of equity ownership—10.7% instead of the originally agreed amount of 11.7%—in exchange for a promise by AGLT to pay cash compensation of $165,000 annual salary to Scheufler upon a successful financing.

22.   Chris Mayle, the duly authorized Chief Executive Officer of AGLT, sent the following email to Scheufler on May 26, 2017 (the "May 2017 Email Confirmation"), which was concurrently sent to defendant Lipton and two others:

> Stan
>
> I have proposed to the board your proposal and it looks like we are in agreement. I will get something formally together when we have the attorneys re-issue the cap table, but for now here is what we are all in agreement on.
>
> You will be an equity partner with AGLT for the time and effort put forth in the past almost 18 months. After bringing you in, the original partners will end up with approximately 11.7% and you will end up exactly 1% less at approximately 10.7%
>
> In return for your returning 1% to AGLT, upon the closing of the $1.1m finance round you will receive the salary you budgeted in the $1,1m of $165k.
>
> Any and all compensation are only agreed upon in the angel round of funding. If a VC is brought in for Series A financing, it is entirely possible your compensation and equity positions may be changed by the VC.

BONA LAW PC
BUSINESSJUSTICE.COM

Best regards

Chris

23. Scheufler, including because of communications from Mayle in 2017 and 2018, understood the May 2017 Email Confirmation as, among other things, (a) confirming AGLT's agreement that Scheufler would be issued 10.7% of AGLT's equity, (b) acknowledging that the 10.7% equity in AGLT was partial consideration for Scheufler's previous services to AGLT as of May 2017 ("You will be an equity partner with AGLT *for the time and effort put forth in the past almost 18 months*") and, accordingly, was agreed by the parties to be immediately vested and not subject to any future vesting, milestone, condition, or risk of forfeiture as a matter of contract or law, (c) stating that only the salary of $165,000 was subject to a financing milestone or condition precedent, (d) recognizing that a future venture capital investor may, as a condition of its proposed investment, require a change to the agreed-on equity ownership and/or salary that had been previously agreed by AGLT and Scheufler, and (e) using a different term for Scheufler's equity ownership from the term used for his salary ("[I]t is entirely possible your compensation and equity positions may be changed by the VC.") (emphasis added).

24. In fact, Mayle knew that Scheufler wanted more than 10.7%, and Mayle communicated that he expected that Scheufler's equity stake would likely increase going forward. A Cap Table worksheet included a 12.5% employee stock ownership plan for Scheufler post-Series A.

25. In addition, Scheufler understood the May 2017 Email Confirmation as very clearly stating that the only "issue" with his 10.7% equity ownership in AGLT was the formal documentation of this ownership, which AGLT wanted outside legal counsel to do but for which AGLT did not have sufficient funds on hand to pay at such time.

26. Moreover, Scheufler understood defendant Mayle's reference to "[i]n return for your returning 1% to AGLT" as being consistent with Scheufler's understanding that he owned 11.7% of AGLT but had agreed to reduce this percentage in exchange for a

BONA LAW PC
BUSINESSJUSTICE.COM

1    promise of future cash compensation upon financing. Otherwise, there would have been

2    nothing to "return" to AGLT at the time of the May 2017 Email Confirmation.

3        27.   From and after May 26, 2017, and at all relevant times thereafter, Scheufler

4    continued to work as chief operating officer of AGLT in reliance on his agreement with

5    AGLT regarding his 10.7% equity ownership and salary compensation, which was

6    confirmed by AGLT's CEO in the May 2017 Email Confirmation.

7        28.   From September 1, 2017 through early 2018, AGLT engaged Berg Capital in

8    San Diego, California to assist AGLT with the prospective financing that was referred to

9    in the May 2017 Email Confirmation. Scheufler found Berg Capital and brought them in

10    after the company was unable to raise funds on its own. Scheufler was the primary point

11    of contact for Berg Capital, and both Scheufler and Chris Mayle, AGLT's CEO, were

12    actively involved with Berg Capital on this financing initiative and were supplementing

13    the efforts of Berg Capital from early 2017 through early 2018 with their own contacts—

14    including through many conference calls and work on investor materials.

15        29.   Scheufler's 10.7% equity ownership in AGLT was accurately reflected in

16    numerous documents developed by AGLT that were provided to Berg Capital and/or

17    prospective investors as part of AGLT's financing initiative in 2017 and 2018, including,

18    without limitation, a document entitled "AGLT Cap Table Worksheet.xlsx." In certain

19    instances, AGLT's CEO Chris Mayle either received or sent representatives of Berg

20    Capital documents that showed Scheufler as having a present 10.7% equity ownership in

21    AGLT. Mayle and the other 5 partners of AGLT also each reviewed and discussed these

22    documents.

23        30.   For instance, a key document with the filename "AGLT Cap Table

24    Worksheet.xlsx" was developed by AGLT and provided to Berg Capital as part of the

25    AGLT financing initiative. In a Berg Capital document dated January 31, 2018, entitled

26    "AGLT Progress to Date," Scheufler's 10.7% ownership in AGLT is reflected in numerous

27    places, with a smaller percentage indicated as Scheufler's pro forma ownership

28

BONA LAW PC
BUSINESSJUSTICE.COM

1    percentage after the assumed financing(s). A true and correct copy of one page of the

2    January 31, 2018 document incorporating this information is attached as Exhibit 1 and

3    incorporated into this Complaint.

4        31.   The information on the left-hand side of Exhibit 1 is contained in Exhibit 2,

5    which is incorporated into this Complaint.  It clearly shows Scheufler's position as COO

6    and Scheufler's 10.7% equity ownership in AGLT as of January 2018 (under the column

7    entitled "Pre-Seed #2"). Importantly, Scheufler's 10.7% equity ownership in AGLT is

8    shown right above the 0.00% indicated for "Seed Series Investors" and "Series A

9    Investors" and "Employee Stock Option Plan."

10        32.   This demonstrates definitively that Scheufler's 10.7% equity ownership was

11    ***not*** portrayed to Berg Capital (or the potential investors to whom this information was

12    provided) as being contingent on a financing but rather was accurately reflecting his

13    ***present ownership*** in AGLT, consistent with his oral agreement with AGLT and

14    consistent with the May 2017 Email Confirmation.

15        33.   As indicated by Berg Capital in their January 2018 presentation to AGLT,

16    including its founders, the information in the AGLT Cap Table Worksheet.xlsx document

17    was "repeatedly fine-tuned and scrubbed over many weeks" and was, in fact, used in

18    connection with discussions and negotiations with multiple potential investors.

19                             **DEFENDANTS' WRONGFUL CONDUCT**

20        34.   Beginning in approximately January 2018, defendants (except Green Thumb)

21    unilaterally concocted a plan to abandon fundraising through minority investment in

22    AGLT—the target to which Scheufler's cash compensation was pegged—and instead

23    attempt to conduct an initial public offering of AGL on a Canadian stock exchange, a

24    portion of the proceeds from which would be used to fund AGLT.  When this plan was not

25    successfully executed by the fourth quarter of 2018, defendants (except Green Thumb)

26    unilaterally concocted a new plan to sell AGL and AGLT in a third-party acquisition

27    while simultaneously working to undo the promises they made to Scheufler.

28

Complaint

Bona Law PC
BusinessJustice.com

35.  In January 2018, defendants (except Green Thumb) cancelled the contract with Berg Capital, the company that was assisting Scheufler in executing AGLT's fundraising strategy, thus unfairly depriving Scheufler of the possibility of raising $1.1 million in minority fundraising that would have guaranteed him $165,000 in cash compensation.

36.  On February 9, 2018, defendants (except Green Thumb) sent an email to Scheufler falsely claiming that Scheufler had not been issued any ownership or equity in AGLT notwithstanding their May 26, 2017 agreement.

37.  Without Scheufler's knowledge or consent as an equity owner in AGLT, defendants began acquisition discussions with Green Thumb.

38.  In fact, AGLT, AGL, Mayle, and Lipton did not provide *any* notice to Scheufler that they were engaged in negotiations to sell AGLT and AGL to defendant Green Thumb. The first Scheufler learned of the possibility of a sale of AGL or AGLT was when he read the press release issued by Green Thumb announcing its prospective acquisition of AGL in January 2019. Scheufler promptly called Mayle to discuss the situation.

39.  Despite the repeated insistence by defendants AGLT, AGL, Mayle, and Lipton through at least early 2018 that AGLT's minimum value for a minority investment was at least $10 million, they conspired with Green Thumb to assign an arbitrarily low value of zero to AGLT as part of the purchase price allocation agreed between defendants AGL, AGLT, and Green Thumb—even as AGL continued to pay for maintenance of the relevant patents. Because the same five principals of AGL were the only principals of AGLT other than Scheufler, whether they received consideration from Green Thumb for "just" AGL or for a combination of AGL and AGLT would not have changed the total consideration paid to them, except for Scheufler's 10.7% ownership in AGLT.

40.  In fact, valuation documents and materials for AGLT in 2018 suggested the company was worth millions of dollars. The only reasonable inference to be drawn from these facts is that all of the defendants knowingly and deliberately employed an

Bona Law PC
BusinessJustice.com

1  acquisition structure designed to completely exclude Scheufler from the economic benefit

2  of his 10.7% ownership of AGLT.

3      41.   The inconsistent email correspondence between defendants Lipton and Mayle

4  in March 2019 denying either that Scheufler owned any equity in AGLT or that there

5  was any value allocated to AGLT as part of the acquisition of AGLT by defendant Green

6  Thumb represent breaches of the agreements Scheufler reasonably believed he had with

7  AGLT and on which he reasonably relied.

8  ### FIRST CAUSE OF ACTION

9  **AGAINST AGLT AND GREEN THUMB**

10  **(Breach of Contract)**

11      42.   Scheufler re-alleges and incorporates by reference each and every allegation

12  in the foregoing paragraphs of this complaint.

13      43.   Defendant AGLT entered into an oral employment contract with Scheufler in

14  2017, which included issuing equity equal to 11.7% of the then-current equity in AGLT

15  and salary compensation.   Scheufler relied on this agreement to his detriment by

16  working in the employment of AGLT as its chief operating officer.

17      44.   Defendant AGLT later entered into a written contract with Scheufler on May

18  26, 2017 under which Scheufler would return 1% of the total ownership interests of

19  AGLT and would keep 10.7% of the total ownership interests of AGLT in compensation

20  for his employment as chief operating officer of AGLT. In addition, Scheufler would

21  receive $165,000 in annual cash salary upon securing target financing in the form of $1.1

22  million of minority ownership fundraising.

23      45. Scheufler   performed   all   obligations   under   the   contract,   including   by

24  performing services as chief operating officer for AGLT in accordance with the terms of

25  the agreement.

26

27

28

46.  Defendant AGLT failed to "formally" issue equity to Scheufler before AGLT's acquisition by Green Thumb in February 2019, and defendant AGLT failed to pay any salary compensation to Scheufler either before or after such acquisition.

47.  Green Thumb, after acquiring 100% ownership in AGLT, continued to refuse to perform the contract and cure the breach.

48.  Accordingly, as a direct and proximate result of the breaches of contract as alleged herein, Scheufler has sustained damages in an amount to be proved at trial.

<u>**SECOND CAUSE OF ACTION**</u>

**AGAINST AGLT**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

49.  Scheufler re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

50.  California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California, including oral employment contracts. *See, e.g., Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988).

51.  Defendant AGLT breached the implied covenant of good faith and fair dealing through a variety of actions and omissions, including, without limitation:

   a.   intentionally entering into an employment agreement with Scheufler that called for, among other things, issuance of equity ownership in AGLT equal to 10.7%, repeatedly confirming this amount, and then not completing the formalities of issuing the agreed-on equity to Scheufler;

   b.   intentionally failing to notify Scheufler that it was engaged in acquisition negotiations with Green Thumb pursuant to which it was taking the position that Scheufler had zero equity ownership in AGLT;

BONA LAW PC
BUSINESSJUSTICE.COM

     c.     intentionally entering into an employment agreement with Scheufler that called for, among other things, deferral of cash compensation to Scheufler based on an investment condition precedent, then making the investment difficult to impossible to accomplish by insisting on a minimum pre-money value of $10 million for an approximately 10% minority investment in AGLT in 2018, and then shortly thereafter agreeing with Green Thumb in early 2019 that the value of AGLT for purposes of acquiring 100% of AGLT was actually zero; and

     d.     denying that an acquisition of AGLT, in fact, satisfied the investment condition precedent for awarding compensation to Scheufler.

52.   As a direct result of the these breaches of the implied covenant of good faith and fair dealing, Scheufler has suffered significant harm, including, but not limited to, lost opportunities to engage in discussions and negotiations with Green Thumb as an equity owner in AGLT, lost compensation from not receiving consideration for AGLT equity owned by Scheufler and/or deferred salary as part of the closing of the AGLT acquisition by Green Thumb, as well as significant costs in the form of attorneys' fees, for all of which Scheufler is entitled to damages as requested.

## THIRD CAUSE OF ACTION
### AGAINST AGLT
### *(Promissory Estoppel)*

53.   Scheufler re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

54.   If a contract was not formed, Scheufler pleads in the alternative that defendant AGLT made a clear and unambiguous promise to Scheufler in early 2017, which included issuing equity equal to 11.7% of the then-current equity in AGLT and salary compensation.

BONA LAW PC
BUSINESSJUSTICE.COM

55. Defendant AGLT made a clear and unambiguous promise to Scheufler on May 26, 2017 under which Scheufler would keep 10.7% of the total ownership interests of AGLT in compensation for his employment as chief operating officer of AGLT (with Scheufler returning 1% of his prior 11.7% ownership interests of AGLT). In addition, AGLT promised Scheufler that he would receive $165,000 in cash compensation upon securing target financing in the form of $1.1 million of minority ownership fundraising.

56. Scheufler actually relied to his detriment upon these promises by continuing to work in the employment of AGLT as chief operating officer, foregoing cash compensation and certain other employment opportunities while waiting to be paid.

57. Scheufler's reliance was reasonable and foreseeable, as he had no reason to doubt that AGLT would fail to perform its obligations at the time he relied on the promise.

58. Injustice can be avoided only by enforcement of the promise. Scheufler committed substantial time and effort to fulfilling the objectives of AGLT on the expectation that he would receive value the parties had agreed would be commensurate with his contribution. If the promise is not enforced, Scheufler will receive nothing for his substantial contribution.

### FOURTH CAUSE OF ACTION
### AGAINST AGLT
### *(Quantum Meruit)*

59. Scheufler re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

60. From February 2017 to September 30, 2018 at Encinitas, California, Scheufler rendered work, labor, and services to defendant AGLT at the special request of defendants AGLT and Mayle, for which defendants AGLT and Mayle promised to pay Scheufler the reasonable value of such services.

BONA LAW PC
BUSINESSJUSTICE.COM

61.   At all times herein mentioned, the above services were and are of the reasonable value of $233,750 plus the additional value of equity in defendant AGLT.

62.   No part of the above sum has been paid notwithstanding that Scheufler has demanded payment therefor, and there is now due, owing, and unpaid from defendant AGLT to Scheufler the sum of $233,750.

## FIFTH CAUSE OF ACTION

### AGAINST AGLT

### (Unpaid Wages)

63.   Scheufler re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

64.   From February 2017 to September 30, 2018 at Encinitas, California, Scheufler rendered work, labor, and services to defendant AGLT as chief operating officer of AGLT.

65.   While Scheufler was willing to defer the payment of his salary until additional financial resources could be obtained as part of his oral employment agreement, Scheufler did not agree to accept zero compensation for services rendered.

66.   California Labor Code § 1197 makes it unlawful to pay an employee less than the minimum wage, as established by the California Industrial Welfare Commission, for each hour worked.

67.   Under the California Labor Code, an employee may not waive his or her right to receive the applicable minimum wage, and any such purported waiver is of no force or effect.

68.   California Labor Code § 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.

Complaint

BONA LAW PC
BUSINESSJUSTICE.COM

69.   California Labor Code § 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

70.   Defendant AGLT failed to pay Scheufler *any* compensation at all for each of hour of work, and thus failed to pay the minimum wage that he was entitled to, for each hour worked, under California Labor Code § 1197 and California General Minimum Wage Orders MW-2017 and MW-2018.

71.   Scheufler is informed and believes, and based thereon alleges, that defendant AGLT's failure to pay the minimum wage for each hour worked, as described herein, was done willfully.

72.   Based on defendant AGLT's conduct, as alleged herein, defendant AGLT is liable to Scheufler for unpaid minimum-wage compensation pursuant to California Labor Code §§ 1194 and 1197, and California General Minimum Wage Orders MW-2017 and MW-2018, liquidated damages in an amount equal to the unpaid wages owed to Scheufler, plus interest, pursuant to California Labor Code § 1194.2, and attorneys' fees and costs of suit, pursuant to California Labor Code §§ 1194 and 1194.2.

## SIXTH CAUSE OF ACTION
### AGAINST AGLT
### (Failure to Furnish Wage Statements)

73.   Scheufler re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

74.   California Labor Code § 226(a) requires employers to provide employees, semi-monthly or at the time of each payment of wages, with a statement that accurately reflects certain itemized information, including total number of hours worked. Defendants AGLT and Mayle knowingly and intentionally failed to furnish and continue to fail to furnish Scheufler with timely and accurate wage statements that accurately reflect the total number of hours he worked and wages he earned for dozens of pay

BONA LAW PC
BUSINESSJUSTICE.COM

periods, as required by California Labor Code § 226. Any 1099 forms that AGLT provided do not satisfy such requirements.

75.   Pursuant to California Labor Code § 226(e)(2)(A), an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

76.   As a result, defendant AGLT is liable to Scheufler for the amounts provided by California Labor Code § 226(e): the greater of actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000), and Scheufler is furthermore entitled to an award of costs and reasonable attorney's fees.

## SEVENTH CAUSE OF ACTION
### AGAINST AGL, AGLT, LIPTON and MAYLE
#### (Fraud)

77.   Scheufler re-alleges and incorporates by reference each and every allegation in the foregoing paragraphs of this complaint.

78.   In early 2017, defendants Lipton and Mayle, and on behalf of AGL and AGLT, represented to Scheufler that, in exchange for his commitment to work exclusively for AGLT, he would, upon acceptance, immediately receive 11.7% equity ownership in AGLT.

79.   On May 26, 2017, defendants Lipton and Mayle themselves and on behalf of AGL and AGLT, represented to Scheufler that in exchange for his continued commitment to work exclusively for AGLT and for a return of 1% of the total equity ownership held by Scheufler, he would be guaranteed an opportunity to receive $165,000 in cash compensation upon obtaining financing of at least $1.1 million for AGLT.

80.   These representations were false promises made without any intention of performance.   Defendants (excluding Green Thumb) knew that they did not intend to abide by their promises to Mr. Scheufler on May 26, 2017. No later than February 9,

BONA LAW PC
BUSINESSJUSTICE.COM

1   2018, defendants refused to recognize Mr. Scheufler's equity rights and claimed that he

2   never had any such rights. Defendants also never had any intention to pay Mr. Scheufler

3   $165,000 but used that promise to fraudulently induce Mr. Scheufler to accept a promise

4   to pay that amount in exchange for a reduction in his equity share, and either

5   intentionally frustrated his ability to raise funding or intentionally excluded him from

6   the opportunity to raise such funding from Green Thumb.

7        81.   Defendants intended to induce Scheufler to work for AGLT. They knew that

8   by offering these terms to Scheufler, he would be motivated to achieve AGLT's objectives

9   on its behalf.

10       82.   Scheufler justifiably relied upon these representations and was actually

11  induced to work for AGLT.   But for the representations, Scheufler would not have

12  worked for AGLT, he would not have foregone cash compensation in exchange for an

13  equity share, and he would have sought other work and taken on other, more lucrative

14  opportunities.

15       83.   Defendants' misrepresentations proximately caused Scheufler's sustained

16  damages, the amount of which will be determined at trial.

17  ### EIGHTH CAUSE OF ACTION

18  ### AGAINST ALL DEFENDANTS

19  ### (Civil Conspiracy)

20       84.   Scheufler re-alleges and incorporates by reference each and every allegation

21  in the foregoing paragraphs of this complaint.

22       85.   Between February 2018 and February 2019, the defendants agreed to and

23  undertook a common plan to deprive Mr. Scheufler of his right to receive value for his

24  equity ownership interest in AGLT.

25       86.   At some time in 2018, each of the defendants began negotiating the

26  acquisition of AGL and AGLT by Green Thumb.

27

28

BONA LAW PC
BUSINESSJUSTICE.COM

87.  Each of the defendants, including Green Thumb, knew that under the May 26, 2017 agreement, Mr. Scheufler held a 10.7% ownership interest in AGLT. Mr. Scheufler's ownership interest and position on the board of directors was clearly stated in investor materials relating to AGLT.

88.  Notwithstanding the defendants' knowledge of Mr. Scheufler's AGLT ownership and board rights, they each conspired with one another to structure the deal in a manner so as to avoid detection by Mr. Scheufler and to deprive him of his ownership and control rights relating to AGLT.

89.  Each defendant knew that their common plan would result in the sale of AGLT without Mr. Scheufler's knowledge or consent, and each also knew that by structuring the transaction in the manner they chose, Mr. Scheufler would be deprived of any and all compensation from the sale of his ownership interest in AGLT.

90.  Each defendant materially benefited from the plan. Green Thumb acquired two companies that would strategically solidify Green Thumb's presence in the Northeast United States, while the individual defendants would receive a much larger piece of the pie by excluding Mr. Scheufler.

91.  Each defendant knew that AGLT was worth millions of dollars and agreed to fraudulently assign zero value to the company as part of the sale.

92.  Defendants' conduct was malicious, purposeful, intentional, and unlawful, and proximately caused or substantially contributed to the direct and foreseeable consequences of their conduct, including Mr. Scheufler's resulting injuries.

## **REQUEST FOR RELIEF**

WHEREFORE, Scheufler requests judgment as follows:

1.  Compensatory damages, liquidated damages, and restitution in an amount to be determined at trial, but not less than $1.07 million, plus interest at the rate of 10% per annum accruing between February 12, 2019 and the date of judgment;

2.  For post-judgment interest;

BONA LAW PC
BUSINESSJUSTICE.COM

3.   For punitive damages according to proof;

4.   For attorney fees, statutory costs, and expenses;

5.   For judgment in favor of Scheufler and against each defendant on all causes of action; and

6.   For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Scheufler hereby demands a jury trial.

DATED: November 27, 2019

*s/ Aaron Gott*

AARON GOTT
Bona Law PC
Jarod Bona
Aaron Gott
David C. Codell
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com
aaron.gott@bonalawpc.com
david.codell@bonalawpc.com

Martin A. Sabarsky
mas@kirkpatricksabarsky.com
Melissa R. Kirkpatrick
mrk@kirkpatricksabarsky.com
KIRKPATRICK & SABARSKY LLP
590 Cypress Hills Drive
Encinitas, CA 92024-2396
760.268.2069
888.305.1022 (fax)

*Counsel for Plaintiff*

# EXHIBIT 1

# AGLT Cap Table Worksheet



- File Title: **"AGLT Cap Table Worksheet.xlsx":**
- Relevance/Importance:
  - A critical spreadsheet that was repeatedly fine-tuned and scrubbed over many weeks that can now be used both as an internal tool as well as to use in educating and negotiating with potential investors, including Series A investors.

Berg Capital Markets, LLC

© 2017. All rights reserved.

# EXHIBIT 2

# Advanced Grow Labs Technologies

| | |
|---|---|
| Seed Raise #1 | $550,000 |
| Seed Raise #2 | $1,000,000 |
| Berg Capital Seed #2 | $100,000 |
| Seed Valuation iff | $8,000,000 |
| Series A Raise | $6,000,000 |
| Series A Valuation | $15,000,000 |

| | |
|---|---|
| Discount Rate | 20% |
| Annual Interest Rate | 8% |
| Valuation Cap iff | $12,000,000 |

### Seed Method : Equity

| Name | Pre-Seed #2 Ownership | Value | Pre-Seed #2 Ownership | Pre-Series A Value | Ownership |
|---|---|---|---|---|---|
| Founder 1 = Chris Mayle/CEO | 11.70% | $807,300 | 10.09% | $719,002 | 4.79% |
| Founder 2 | 11.70% | $807,300 | 10.09% | $719,002 | 4.79% |
| Founder 3 | 11.70% | $807,300 | 10.09% | $719,002 | 4.79% |
| Founder 4 | 11.70% | $807,300 | 10.09% | $719,002 | 4.79% |
| Founder 5 | 11.70% | $807,300 | 10.09% | $719,002 | 4.79% |
| Stan, Partner/COO | 10.70% | $738,300 | 9.23% | $657,548 | 4.38% |
| AGL Others | 30.80% | $2,125,200 | 26.57% | $1,892,756 | 12.62% |
| Seed Series Investors | 0.00% | $1,100,000 | 13.75% | $979,688 | 6.53% |
| Series A Investors | 0.00% | | 0.00% | $6,000,000 | 40.00% |
| Employee Stock Option Plan | 0.00% | | 0.00% | $1,875,000 | 12.50% |

### Seed Method : SAFE Simple Agreement for Future Equity, 20% Discount Rate, ... Berg Capital

| Name | Pre-Seed #2 Ownership | Value | Pre-Seed #2 Ownership | Pre-Series A Value | Ownership |
|---|---|---|---|---|---|
| Founder 1 = Chris Mayle/CEO | 11.70% | | 11.70% | $672,750 | 4.49% |
| Founder 2 | 11.70% | | 11.70% | $672,750 | 4.49% |
| Founder 3 | 11.70% | | 11.70% | $672,750 | 4.49% |
| Founder 4 | 11.70% | | 11.70% | $672,750 | 4.49% |
| Founder 5 | 11.70% | | 11.70% | $672,750 | 4.49% |
| Stan, Partner/COO | 10.70% | | 10.70% | $615,250 | 4.10% |
| AGL Others | 30.80% | | 30.80% | $1,771,000 | 11.81% |
| Seed Series Investors | 0.00% | $ 1,100,000 | 0.00% | $1,375,000 | 9.17% |
| Series A Investors | 0.00% | | 0.00% | $6,000,000 | 40.00% |
| Employee Stock Option Plan | 0.00% | | 0.00% | $1,875,000 | 12.50% |

### Seed Method : Convertible Note 20% Discount Rate, 8% Annual Interest Rate, ... Berg Capital

| Name | Pre-Seed #2 Ownership | Post-Seed #2 Ownership | Pre-Series A (after 1 year) Shares | Ownership | Pre-Series A (after 2 years) Shares | Ownership |
|---|---|---|---|---|---|---|
| Founder 1 = Chris Mayle/CEO | 11.70% | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 2 | 11.70% | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 3 | 11.70% | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 4 | 11.70% | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 5 | 11.70% | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Stan, Partner/COO | 10.70% | 10.70% | $603,480 | 4.02% | $590,768 | 3.94% |
| AGL Others | 30.80% | 30.80% | $1,737,120 | 11.58% | $1,700,530 | 11.34% |
| Seed Series Investors | 0.00% | $ 1,100,000 | 0.00% | $1,485,000 | 9.90% | $1,603,800 | 10.69% |
| Series A Investors | 0.00% | | 0.00% | $6,000,000 | 40.00% | $6,000,000 | 40.00% |
| Employee Stock Option Plan | 0.00% | | 0.00% | $1,875,000 | 12.50% | $1,875,000 | 12.50% |

| Seed Method - Convertible Note (70% Discount Rate, 8% Annual Interest Rate, 10% to Berg Capital, and $12M Valuation Cap) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Cap Table Entity | Pre-Seed % | Post-Seed % | | Pre-Series A (with vest) | | Post-Series A (with vest) | |
| Name | Ownership | | Ownership | Shares | Ownership | Shares | Ownership |
| Founder 1 = Chris Mayle/CEO | 11.70% | | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 2 | 11.70% | | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 3 | 11.70% | | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 4 | 11.70% | | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Founder 5 | 11.70% | | 11.70% | $659,880 | 4.40% | $645,980 | 4.31% |
| Stan, Partner/COO | 10.70% | | 10.70% | $603,480 | 4.02% | $590,768 | 3.94% |
| AGL Others | 30.80% | | 30.80% | $1,737,120 | 11.58% | $1,700,530 | 11.34% |
| Seed Series Investors | 0.00% | $ 1,100,000 | 0.00% | $1,485,000 | 9.90% | $1,603,800 | 10.69% * |
| Series A Investors | 0.00% | | 0.00% | $ 6,000,000 | 40.00% | $ 6,000,000 | 40.00% |
| Employee Stock Option Plan | 0.00% | | 0.00% | $ 1,875,000 | 12.50% | $ 1,875,000 | 12.50% |
| Total | 99.99% | | 100.00% | $ 14,990,000 | 99.99% | $ 15,000,000 | 101.00% |

* Wash, as Cap equals valuation minus discount